# In the United States Court of Federal Claims

No. 19-663C

(Filed:  June 3, 2020)

```
*********************************************   )
JOEL V. KELTNER,                               )
                                               )
                          Plaintiff,           )    Military Pay; Board for Correction of
                                               )    Military Records; Motion For Voluntary
            v.                                 )    Remand; Remand Statute; SKF USA Inc.
                                               )    v. United States; Administrative Record
THE UNITED STATES,                             )    Review; RCFC 52.2.
                                               )
                          Defendant.           )
                                               )
*****************************************       )
```

*Sara Ruvic*, Buckley, LLP, Washington, DC, for plaintiff.  With her on the briefs was *Meghann Fogarty Kovler*.

*John M. McAdams III*, United States Department of Justice, Civil Division, Washington, DC, for defendant.  With him on the briefs were *Joseph H. Hunt*, Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

## OPINION AND ORDER

**SOLOMSON, Judge.**

## I.    Background

Plaintiff, Joel V. Keltner, seeks disability retirement pay and benefits, which he alleges the United States Department of the Air Force ("Air Force") unlawfully has denied him. The government moved to stay the case and for this Court to grant a voluntary remand of the matter to the Air Force Board for Correction of Military Records ("AFBCMR") pursuant to Rule 52.2 of the Rules of the Court of Federal Claims ("RCFC").  Before resolving the government's motion, this section summarizes the underlying facts and procedural history.  For the purposes of resolving the pending motion, the Court "makes no finding of facts herein and accepts as true all well-pleaded

factual allegations in the Complaint." *Hirsch v. United States*, 2019 WL 4316880, at *1 n.1 (Fed. Cl. Sept. 12, 2019) (military pay case arising from Army BCMR decision).

### A.   Factual Background

Mr. Keltner enlisted in the Air Force approximately two weeks before the terrorist attacks of September 11, 2001.  ECF No. 1 ("Compl.") ¶ 12.  On January 16, 2002, Mr. Keltner entered active duty service, and, in October 2003, Mr. Keltner deployed to Pakistan for his first of three combat tours of duty.  *Id.* ¶¶ 12-13.  On February 16, 2006, Mr. Keltner transitioned from active duty to the Air Force Reserve, and, in January 2008, Mr. Keltner deployed again, this time to Iraq.  *Id.*

In August 2011, Mr. Keltner deployed to Afghanistan for his final combat tour of duty.  Compl. ¶ 13.  While deployed, Mr. Keltner experienced mortar, rocket, and small arms fire attacks.  *Id.* ¶ 14.  Mr. Keltner also witnessed wounded warfighters, "including a soldier who had suffered a shrapnel wound to the face."  *Id.*  As is too often the case with combat veterans, Mr. Keltner's "deployment to Afghanistan placed significant stress" on his family as well.  *Id.* ¶ 15.  Three weeks prior to his scheduled return date, Mr. Keltner's wife informed Mr. Keltner "that she planned to seek a divorce, and that she and their two children had moved from their home in Kansas to a new home in Arizona."  *Id.*  In February 2012, Mr. Keltner returned from Afghanistan "to an empty home."  *Id.* ¶ 16.

On February 16, 2012, Mr. Keltner completed a Post Deployment Health Assessment, which did not identify symptoms of Post-Traumatic Stress Disorder ("PTSD").  Compl. ¶ 16.  On August 4, 2012, however, Mr. Keltner completed a Post Deployment Re-Assessment, which indicated that Mr. Keltner was exhibiting PTSD symptoms.  *Id.*  The Air Force advised Mr. Keltner to seek out behavioral health services.  *Id.*  Thereafter, Mr. Keltner met with his primary care physician who diagnosed Mr. Keltner with chronic anxiety as well as depression and prescribed a treatment plan for him.  *Id.* ¶ 17.

On December 1, 2012, Mr. Keltner told members of his unit that he had considered committing suicide.  Compl. ¶ 18.  On December 2, 2012, in response to Mr. Keltner's comments and at the recommendation of certain Air Force mental health staff, Mr. Keltner's superiors took him to a local emergency room for mental health, suicidal ideation, and homicidal ideation assessments.[1]  *Id.* ¶ 19.

On June 8, 2013, Mr. Keltner completed an Air Force Web Based Health Assessment and met with a doctor to discuss the results of that assessment.  Compl. ¶ 21.  The reviewing doctor determined that Mr. Keltner required further assessment and instructed Mr. Keltner to provide the 442nd Medical Squadron with his medical

---

[1] The Complaint does not describe the results of these assessments.

records.  *Id.*  On September 7, 2013, Mr. Keltner went to the 442nd Medical Squadron for an additional assessment.  *Id.* ¶ 23.  The examiner noted that Mr. Keltner presented depressed mood and recommended that he undergo further testing for depression, PTSD, and adjustment disorder.  *Id.*  The 442nd Medical Squadron staff also instructed Mr. Keltner to make an appointment with the 509th Medical Group Mental Health Clinic for further assessment.  *Id.*  On September 17, 2013, Mr. Keltner attended an appointment at the 509th Medical Group Mental Health Clinic where the examiner diagnosed Mr. Keltner with chronic adjustment disorder with anxiety and depressed mood.  *Id.* ¶ 24.

On December 11, 2013, the 442nd Medical Squadron issued a Duty Limiting Condition Report, which determined that Mr. Keltner was no longer qualified for deployment.  Compl. ¶ 25.  A memorandum accompanying the report confirmed that Mr. Keltner's duty-limiting condition was his chronic adjustment disorder.[2]  *Id.*

According to the Complaint, Air Force Instruction ("AFI") 36-2910 and AFI 48-123 required the Air Force to complete a "line of duty determination" to assess whether Mr. Keltner's duty-limiting condition occurred "in the line of duty."  Compl. ¶ 26.  If the Air Force determined that Mr. Keltner's duty-limiting condition occurred in the line of duty, then Mr. Keltner might qualify for a medical discharge or certain retirement benefits.  *Id.* ¶ 27.  The Air Force, however, allegedly did not complete a line of duty determination.  *Id.* ¶ 26.  Instead, on April 24, 2015, the Air Force informed Mr. Keltner that it was initiating an honorable administrative discharge separation action against him.  *Id.* ¶ 28.  The effect of the administrative discharge would be to end Mr. Keltner's military career, but to do so without entitling him to a medical discharge or certain associated retirement benefits.  *Id.*

On June 10, 2015, Mr. Keltner appealed the Air Force's decision to initiate an honorable administrative discharge separation action to the AFBCMR.  Compl. ¶ 28.  The AFBCMR's decision is at the heart of Mr. Keltner's Complaint in this Court.

To resolve Mr. Keltner's appeal, the AFBCMR solicited two medical advisory opinions: one from Dr. Natalya Chernyak, a psychiatric consultant, and a second from Colonel June Cook, a representative from the Air Force Reserve Command/Surgeon General Office ("AFRC/SGO").  Compl. ¶ 29.  Both advisory opinions agreed that a line of duty determination was necessary to assess Mr. Keltner's claim, and both opinions proceeded to analyze whether Mr. Keltner's disorder developed "in the line of duty."  *Id.* ¶ 30.  The advisory opinions, however, allegedly applied divergent standards and thus arrived at different conclusions.  Dr. Chernyak determined that Mr. Keltner

---

[2] The Complaint also variously refers to "chronic adjustment disorder/PTSD."  *See, e.g.*, Compl. ¶ 40.  The Complaint is not entirely clear regarding whether they are the same or related disorders or, if they are distinct, whether Mr. Keltner's claims depend on the presence of both disorders.

incurred his disorder in the line of duty, while COL Cook determined that Mr. Keltner's disorder was the result of "personal stressors" and did not occur in the line of duty. *Id.* ¶¶ 32-34.  Mr. Keltner alleges that Dr. Chernyak applied the correct standard as AFI 36-2910 prescribed, while COL Cook applied a standard that was contrary to AFI 36-2910. *Id.* ¶¶ 32–33, 36–37.  Further, Mr. Keltner alleges that COL Cook's advisory opinion was unsupported by substantial evidence.  *Id.* ¶ 37.

The AFBCMR adopted COL Cook's advisory opinion and denied Mr. Keltner's claim.  Compl. ¶ 36.  In particular, the AFBCMR concluded:

> While we note the comments of AFBCMR Psychiatric Advisor indicating that relief should be granted because the applicant was subsequently awarded a 10 percent disability rating for Post-Traumatic Stress Disorder by the Department of Veterans Affairs, the Board took notice of the applicant's complete submission in judging the merits of the case and *agreed with the opinion and recommendation of AFRC/SGO and adopt its rationale the applicant has not been a victim of an error or injustice as we did not find where the applicant's mental health issues were the result of military stressors*.

*Id.* (emphasis added).

## B.     Procedural History

On May 3, 2019, Mr. Keltner filed his Complaint in this Court.  *See generally* ECF No. 1.  On June 28, 2019, the government moved for an extension of time to file its response to the Complaint, which the Court granted on July 1, 2019.  ECF Nos. 5, 6.  On August 22, 2019, the government moved for a second extension of time to file its response to the Complaint, which the Court granted on August 27, 2019.  ECF Nos. 7, 8.  The Court ordered the government to file its response by November 1, 2019.  ECF No. 8.

On November 1, 2019, the government filed a motion to stay the current proceedings and to remand the matter to the AFBCMR pursuant to RCFC 52.2.  ECF No. 9 ("Def. Mot.").  In that motion, the government noted that it had filed the "motion for voluntary remand in lieu of a response to the complaint" and requested that "the parties be allowed to submit a proposed schedule for cross-motions for judgment on the administrative record" if "the Court does not grant this motion."  Def. Mot. at 1 n.1.[3]

---

[3] The Court is skeptical of the government's motion and whether it complies with this Court's rules.  RCFC 12(a)(1)(A) requires the United States to "file an answer to a complaint within 60 days after being served with the complaint."  RCFC 12(a)(4) provides that "serving a motion *under this rule or RCFC 56* alters the[] period[]" for filing an answer and requires the government to file a responsive pleading to a complaint fourteen days "after notice of the court's action" denying a motion under RCFC 12 or 56 in whole or in part, or postponing its

On December 16, 2019, Mr. Keltner responded to the government's motion, and the government filed its reply on December 23, 2019.  ECF Nos. 12, 13 [hereinafter "Pl. Resp." and "Def. Rep." respectively].[4]

On March 11, 2020, the Court ordered supplemental briefing.  ECF No. 16.  The parties submitted their respective supplemental briefs on March 26, 2020.  ECF Nos. 17, 18.

On March 31, 2020, the Court heard oral argument on the government's motion for voluntary remand.  On March 31, 2020, after giving the government an opportunity to address the Court's concerns at oral argument, the Court issued an order striking the government's supplemental brief as nonresponsive to, and in violation of, this Court's March 11, 2020 Order.  ECF No. 19.[5]

---

disposition until trial "or the motion's withdrawal."  (emphasis added).  The government did not file an answer to the Complaint or a motion under RCFC 12 or 56.  Instead, the government filed a motion for voluntary remand pursuant to RCFC 52.2.  RCFC 12 and 56, by their plain language, do not appear to permit the government's moving for a voluntary remand pursuant to RCFC 52.2 in lieu of filing a responsive pleading.  In this case, however, what troubles the Court is that the government moved for two extensions of time to file a "response" to the Complaint, only to then file a five-page motion for voluntary remand "in lieu of a response to the complaint" — 182 days after Mr. Keltner filed his Complaint.  In a review of other cases where the government has moved for voluntary remand, the Court has found that the government often submits motions for voluntary remand along with, or after, filing a responsive pleading or motion pursuant to RCFC 12 or 56.  *See, e.g., Hirsch*, 2019 WL 4316880, at *1 ("In response to the plaintiff's motion for judgement on the administrative record and concurrent second motion to supplement the administrative record, the government moved to remand the matter to the Army Board for Correction of Military Records."); *Holmes v. United States*, 142 Fed. Cl. 791, 792 (2019) ("After Mr. Holmes had filed his motion for judgment on the administrative record, the government responded with a motion for a voluntary remand, which is the matter presently before the court.").  That practice clearly complies with the Court's rules; the Court is unconvinced that the government's motion in this case did so.

[4] On February 5, 2020, Judge Mary Ellen Coster Williams reassigned this case to the undersigned Judge.  ECF No. 14.

[5] On March 11, 2020, the Court ordered the parties to be prepared to address two specific questions at oral argument, and to submit supplemental briefing with respect to one of those discrete questions.  *See* ECF No. 16.  The March 11, 2020 Order prohibited the parties from addressing "any new argument or topic beyond that identified in this order."  *Id.*  The government's supplemental brief failed to comply with the Court's March 11, 2020 Order in two ways: (1) the brief did not address the specific question that the Court ordered the parties to answer; and (2) the brief raised a waiver argument for the first time.  *See* ECF No. 19.  After permitting the government to address these concerns at oral argument, the Court issued an Order striking the government's supplemental brief as nonresponsive.  *Id.*

During oral argument, there was some discussion regarding whether Mr. Keltner might consent to a voluntary remand under different conditions than those the government proposed in its motion for voluntary remand.  Accordingly, on March 31, 2020, the Court ordered the plaintiff to file a status report, indicating whether the plaintiff might consent to a voluntary remand despite having previously opposed the motion.  ECF No. 19.  On April 3, 2020, the plaintiff filed a status report, informing the Court that the parties could not "come to a mutually satisfactory resolution at this time" and that the plaintiff remained opposed to the government's motion.  ECF No. 20.

For the reasons explained below, the Court **DENIES** the government's pending motion for a voluntary remand.

## II.   The Government's Motion For A Voluntary Remand Is Denied

The government's motion requires the Court to analyze and apply the largely unexplored jurisprudence of voluntary remands.  *See* Joshua Revesz, *Voluntary Remands: A Critical Reassessment*, 70 Admin. L. Rev. 361, 364 (2018) (hereinafter "*Voluntary Remands*") (noting that "[n]o paper written in the last twenty years has explored the law of voluntary remands").[6]  Ordinarily, the basic principles governing such a remand request are not in dispute and do not prove difficult to apply.  Thus, this Court and other courts around the country routinely grant such requests.  The instant case illustrates, however, that some clarification of this area of the law is warranted.

The decision of the United States Court of Appeals for the Federal Circuit in *SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001), generally provides useful — if not binding — guidance in deciding the government's pending motion.  But few, if any, courts seem to have grappled with the underlying legal principles since the Federal Circuit issued its decision in *SKF USA*.  *See Voluntary Remands*, 70 Admin. L. Rev. at 364 ("[M]ost voluntary-remand decisions are unpublished and unreasoned.").  Instead, "[s]ince the 1950s, courts almost always issue voluntary remands to government agencies," creating a virtual "presumption" that such motions are proper, which "has been reaffirmed in new context after new context."  *Id.* at 395.  In this case, with good cause, the Court exercises its discretion and declines to adhere to any such presumption.

Before turning to the merits of the government's motion, the Court first provides a brief history of the jurisprudence concerning voluntary remands leading to the Federal Circuit's decision in *SKF USA*, which organized, and thereby brought some

---

[6] Both the United States Court of Appeals for the District of Columbia Circuit and the United States District Court for the District of Columbia have cited this article approvingly in opinions addressing motions for voluntary remands.  *See Limnia, Inc. v. United States Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017); *Voyageur Outward Bound Sch. v. United States*, 2020 WL 1275795, at *4 n.4 (D.D.C. Mar. 17, 2020).

structure to, well-established remand principles.  Next, the Court summarizes *SKF USA* and its progeny.  In undertaking such a review, the Court is *not* attempting an academic update of the *Voluntary Remands* article, but rather believes that understanding the background and overall context of *SKF USA* illustrates why either (1) remand would be unwarranted and improper in this matter, or (2) at a minimum, the Court possesses ample discretion to deny the government's motion.

### A.      Early History Of The Law Of Voluntary Remands

A motion for voluntary remand is a government request — after a party has filed a complaint seeking judicial review of agency action — that the court send the challenged action back to an agency for further review or reconsideration.  The precise genesis of the law, *i.e.*, the first time a court considered an agency motion for a voluntary remand, is difficult to pinpoint.[7]  Nonetheless, by the early-1960s, the practice had taken root in American jurisprudence, leading the United States Court of Appeals for the District of Columbia Circuit to opine:  "It is true that when an agency seeks to

---

[7] According to at least some scholarship, *see Voluntary Remands* at 381–82, the United States Court of Appeals for the Third Circuit's decision in *Berkshire Emps. Ass'n of Berkshire Knitting Mills v. NLRB*, 121 F.2d 235 (3d Cir. 1941), is the genesis of the law of voluntary remands.  But the history does not seem entirely clear.  *Voluntary Remands* summarized the Third Circuit's opinion regarding the plaintiff's request to "review and set aside an order of the National Labor Relations Board" as follows:

> In response, the court equivocated.  On the one hand, it acknowledged that such charges of partiality, if substantiated, went "beyond the line of fair dealing."  But it hesitated to void the NLRB's action, explaining that courts and agencies were sufficiently different that reviewing courts must be "exceedingly careful not to jump to hasty conclusions."  Accordingly, it took a novel middle ground: it *sua sponte* remanded the case back to the NLRB, ordering it to "receive the evidence and determine for itself whether, if the facts are established, one of its members is not disqualified from further participation in this case."

70 Admin. L. Rev. at 382 (footnotes omitted).  The Third Circuit, however, does not appear to have remanded the case either *sua sponte* or per the voluntary request of the government.  Rather, the Third Circuit noted that "[p]rior to the hearing on the main part of the case," the *plaintiff* (and not the government agency) moved "to adduce additional testimony" regarding the eight "items which it contend[ed] show that it did not have a full and fair hearing before the Board."  121 F.2d at 236.  The Third Circuit then granted the plaintiff's "petition to adduce the additional testimony on [one of the eight] point[s]" that the plaintiff contended showed that the plaintiff did not have a full and fair hearing before the board.  *Id.* at 239.  In granting the plaintiff's motion, the Third Circuit "referred [the case] back to the Board" for the NLRB to "receive the evidence and determine for itself whether, if the facts are established, one of its members is not disqualified from further participation in this case."  *Id.*

reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency." *Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962).

The early case law recognized that the power of the courts to remand a challenged agency action back to the agency for review was equitable in nature. *See Fleming v. FCC*, 225 F.2d 523, 526 (D.C. Cir. 1955) (remanding licensing decision over the objection of all parties to Federal Communications Commission based in part on "the general equity powers which a court exercises in reviewing administrative action"); *Massachusetts Bay Telecasters, Inc. v. FCC*, 261 F.2d 55, 67 (D.C. Cir. 1958) (noting that remand is proper where "after-discovered circumstances, even without the fault of an agency, may preclude a proper and just result"). In those early cases, courts remanded a matter to an agency primarily so that it could consider an intervening change in the facts or the effect of certain "new" facts which the agency previously had not considered, in the first instance. *See WORZ, Inc. v. FCC*, 268 F.2d 889, 890 (D.C. Cir. 1959) (remanding matter "with instructions to hold . . . an evidential hearing to determine the nature and source of all ex parte pleas and other approaches that were made to Commissioners while the former proceeding was pending"); *WKAT, Inc. v. FCC*, 258 F.2d 418, 419 (D.C. Cir. 1958) (agency moved to remand because, "since the filing of these appeals, public charges have been made in the course of a Congressional investigation that one of the Commissioners who participated in the proceedings before the Commission, but who has since resigned, should have disqualified himself"); *Massachusetts Bay Telecasters*, 261 F.2d at 67 (remanding and noting that the court "should have the benefit of the Commission's determination in such matters before deciding ultimately what disposition should be made of this case"); *Fleming*, 225 F.2d at 526 (remanding matter to the FCC "to determine the effect of Mr. McNutt's death," an intervening factual development with potentially significant ramifications on the outcome of the decision). "In each case, the court granted the motion to remand." *Voluntary Remands*, 70 Admin. L. Rev. at 382.

In 1972, Congress first conferred the remand power on the Court of Claims — the Federal Circuit's (and this Court's) predecessor — via "[t]he remand statute, Pub. L. 92-415, 86 Stat. 652, now codified as part of 28 U.S.C. [§] 1491."[8] *United States v. Testan*, 424

---

[8] The Tucker Act, as amended, provides:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court **may**, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court **shall have the power to remand** appropriate

U.S. 392, 404 (1976).  That statute authorized the issuance of "orders directing restoration to . . . position, placement in appropriate duty . . . status, and correction of applicable records" in order to complement the relief afforded by a money judgment, and also to "remand appropriate matters to any administrative . . . body" in a case "within [the court's] jurisdiction." 28 U.S.C. § 1491(a)(2).[9]  In 1982, Congress created the United States Claims Court by enacting the Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 96 Stat. 25.  Pursuant to that statute, the Claims Court assumed cases originally filed in the United States Court of Claims.  The Claims Court, however, appears primarily to have remanded cases only after reaching the merits on a dispositive motion and for the purposes of determining quantum or entering an order to effectuate the relief the Claims Court had granted.  *See, e.g.*, *Solar Turbines Int'l v. United States*, 3 Cl. Ct. 489, 500 (1983) ("Pursuant to the authority of 28 U.S.C.A. § 1491(a)(2) (West Supp. 1983), . . . this case is remanded to the ASBCA to determine the amount due to plaintiff under . . . its contract with the United States."); *Towne Realty, Inc. v. United States*, 1 Cl. Ct. 264, 270 (1982) ("The case is remanded to the board for further proceedings relevant to the determination of quantum.").

During that same time period, as far as the Court can discern, there are only a limited number of cases from this Circuit[10] that appear to have declined to remand a matter.  In *Roflan Co. v. United States*, No. 609-81C, 1982 WL 36666, at *1 (Ct. Cl. May 11, 1982), for example, the plaintiff (and not the government) moved "to remand [its] case

---

matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491(a)(2) (emphasis added).  "The word 'may,' when used in a statute, usually implies some degree of discretion." *United States v. Rodgers*, 461 U.S. 677, 706 (1983); *see DGR Assocs., Inc. v. United States*, 94 Fed. Cl. 189, 208 (2010) (citing *Rodgers*, 461 U.S. at 706).  The "shall" language in the statute only applies to the grant of the power itself, not the duty to exercise that power.  Accordingly, the statute suggests, and the caselaw confirms, that the Court has discretion when deciding whether to remand particular matters at any stage.  The statute cannot be read to afford the Court *less* discretion *before* the entry judgment.

[9] Although not disputed by the parties, the legislative history suggests that at least one purpose of the remand statute was to enhance this Court's power to grant full relief in military pay cases.  *See* S. Rep. No. 92-1066, at 2 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3116, 3118 ("[T]he present limits on the remedies available in the Court of Claims imposes unwarranted burdens on the litigant . . . in cases involving military personnel.  These generally are monetary claims which are based on retirements in an improper status, such as failure to award disability retirement pay or retirement in proper rank.  Some of the cases are also based on an improper dismissal from the service.  In those cases, the Court of Claims can grant a monetary judgment but cannot alter the serviceman's military status.  This bill would permit the court to grant such military personnel relief collateral to and consistent with the judgment.").

[10] Congress renamed the Claims Court as the United States Court of Federal Claims in Pub. L. No. 102–572, 106 Stat. 4506 (1992).

to the Armed Services Board of Contract Appeals (ASBCA) in order to enable plaintiff to ask for a new hearing and decision on the basis of 'after-discovered evidence.'"  The plaintiff filed the motion nearly two years after the administrative board issued its decision and did not offer any reason as to why "the evidence could not have been discovered by reasonable diligence long before it was, and in time to have been before the ASBCA before it decided the claim." *Id.* at *2.  The United States Court of Claims noted that it had remanded matters to agencies "in a wide variety of circumstances," but declined to remand the instant case because there was "not even an allegation that the evidence could not have been found earlier by the exercise of due or reasonable diligence or that such diligence was in fact exercised." *Id.*  In the court's view "the interests of justice mandate[d] that the finality of decisions be upheld" absent the "most exceptional circumstances," and the court accordingly denied the motion to remand. *Id.*

In *Krzeminski v. United States*, Judge Bruggink, in deciding a military pay claim, wrote:

> Although not requested by either party, the court has considered the possibility of remand to the BCNR or to the Secretary of the Navy (to convene an administrative discharge board). . . .  Based on the circumstances of this case, the court does not believe that remand is appropriate.  The factual and procedural record is sufficient for the court to rule and the respective positions are clearly articulated.

13 Cl. Ct. 430, 441 n.21 (1987).[11]  Accordingly, the Claims Court reached the merits of the plaintiff's claims, granted summary judgment in plaintiff's favor, and ordered the Secretary of the Navy to correct the plaintiff's military records.  *Id.* at 441–42.

By the 1990s, federal courts across the country were granting voluntary remand motions to allow agencies to reconsider legal conclusions, in addition to reconsidering factual determinations.  *See, e.g., Lamprecht v. FCC*, 958 F.2d 382, 385 (D.C. Cir. 1992) (explaining that the court granted the agency's motion for remand where "[t]he Commission acknowledged that it[s] . . . policies [are] contrary to both the Communications Act and the Constitution" and thereafter sought "comments on the wisdom and effectiveness of its policies").  Throughout this period, courts continued the practice of granting voluntary remand motions almost as a matter of course; the D.C. Circuit succinctly summarized the trend in the law:

> We commonly grant such motions, preferring to allow agencies to cure their own mistakes rather than wasting the

---

[11] As discussed *infra*, the Court reaches a similar conclusion in this case.

> courts' and the parties' resources reviewing a record that both
> sides acknowledge to be incorrect or incomplete.

*Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993).  Indeed, as far as the Court can discern, there may have been as few as two cases in which a court denied a motion for voluntary remand.  In *Miss. River Transmission Corp. v. Fed. Energy Regulatory Comm'n*, 969 F.2d 1215, 1217 n.2 (D.C. Cir. 1992), the D.C. Circuit denied the government's motion — which the government filed two business days before oral argument — in a footnote.  The D.C. Circuit explained that its local rule — which required parties to request leave to file potentially dispositive motions more than forty-five days after the docketing of an appeal — precluded consideration of the government's motion for voluntary remand because the government "did not obtain, did not even request, leave to file the motion." *Id.*  While the government's failure to comply with the court's local rule was reason enough to deny the motion, the D.C. Circuit notably commented on a distinct, "*serious defect*" in the government's motion:  "No one reading th[e] motion could tell what [the government] had in mind or what it intended to do with the case if it were returned." *Id.* (emphasis added).  The D.C. Circuit explained that "[o]nly at oral argument, after considerable prodding from the bench, did [the government] reveal what it had in mind," and, while the court did not further detail the government's request, the court "express[ed] . . . extreme displeasure over [the government's] tactics and its disregard of the governing rules." *Id.*

In *Lutheran Church-Mo. Synod v. FCC*, 141 F.3d 344, 348 (D.C. Cir. 1998), the government filed a motion for voluntary remand "[a]lmost two months after" the court heard oral argument on the merits of the appeal.  The government requested a remand based on "a recently released 'policy statement,'" but "could make no representations to the court concerning what sort of order might be adopted in the future." *Id.* at 348-49.  Before addressing the merits, the D.C. Circuit analyzed the government's "novel, last second motion to remand." *Id.* at 349.  The D.C. Circuit explained:

> We simply do not understand, as a matter of administrative
> law, how we could consider a post-argument "policy
> statement," which, as [the FCC] Commissioner [] correctly
> pointed out, does not bind the Commission to a result in any
> particular case.

*Id.*  In the court's view, the government's remand motion was a "ploy" merely "to avoid judicial review," and the court denied the motion accordingly. *Id.*

While this body of case law provided courts with some useful quotations and relevant considerations when ruling on a motion for a voluntary remand, the law lacked "a clear doctrinal test" or some semblance of rules until the Federal Circuit's decision in *SKF USA*.  *Voluntary Remands*, 70 Admin. L. Rev. at 385.

**B.**     *SKF USA* **And Its Progeny**

In *SKF USA*, the Federal Circuit addressed the putative "*obligation* of a court to remand a case to an administrative agency upon the agency's change in policy or statutory interpretation."  254 F.3d at 1025 (emphasis added).  The case, however, is most often cited for its "comprehensive typology of litigation positions an agency might take when its policy is challenged," three of which are voluntary remand situations. *Voluntary Remands*, 70 Admin. L. Rev. at 386.

In *SKF USA*, a company that manufactured and imported antifriction bearings from Germany challenged a Department of Commerce determination – in a proceeding before that agency – that the company's loss incurred on the sale of its Korean subsidiary should be included in the company's general and administrative ("G&A") expense calculation.  254 F.3d at 1025–26.  On appeal before the Court of International Trade ("CIT"), the company again argued "that the loss related to the Korean sale should not be included in the G & A expense calculation."  *Id.* at 1026.  Rather than defend the agency's determination at the CIT, the agency "agree[d] that this loss should not be included in [the company's] G & A ratio" and requested a remand to voluntarily reverse its decision.  *Id.*  The CIT held that it could not "rely on the post-hoc position advanced by Commerce in its brief as the basis to uphold or overturn its administrative action."  *Id.* at 1027 (quoting *SKF USA Inc. v. United States*, 77 F. Supp. 2d 1335, 1345 n.3 (Ct. Int'l Trade 1999)).  The company appealed to the Federal Circuit.

On appeal, the Federal Circuit sought "to place the issue presented here in context," explaining "that when an agency action is reviewed by the courts, in general the agency may take one of five positions."  *Id.* at 1027–28.  The first two situations — in which (1) "the agency defends its decision on the grounds articulated by the agency" or (2) "the agency seeks to defend its decision on grounds not previously articulated by the agency" — by definition are *not* voluntary remand situations.  *Id.* at 1028.

In the third situation, the Federal Circuit explained that "the agency may seek a remand because of intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation."  *Id.*  In that situation, "[a] remand is generally required if the intervening event may affect the validity of the agency action."  *Id.*

As to the fourth situation, the Federal Circuit noted that "even if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position."  *Id.* at 1029.  In that situation, "the reviewing court has discretion over whether to remand."  *Id.*  The Federal Circuit instructed that "a remand is usually appropriate" when the "agency's concern is substantial and legitimate," but that "[a] remand may be refused if the agency's request is frivolous or in bad faith."  *Id.*  The decision understandably does not expound on these standards further because the government's request in *SKF USA* fell into the fifth situation.

-12-

Finally, in the fifth situation, the Federal Circuit held that "the agency may request a remand because it believes that its original decision is incorrect on the merits and wishes to change the result." *Id.* Under such circumstances, a "[r]emand to an agency is generally appropriate to correct simple errors," but requires a more complex analysis when the motion is "associated with a change in agency policy or interpretation." *Id.* When that occurs, the Federal Circuit clarified that the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), impacts the analysis. *Id.* In particular, when reviewing an agency's construction of a statute that it administers, *Chevron* requires courts to first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 1027 (quoting *Chevron*, 467 U.S. at 842). Thus, the Federal Circuit held that when there is "a step one *Chevron* issue — that is, an issue as to whether the agency is either compelled or forbidden by the governing statute to reach a different result — a reviewing court again has considerable discretion" in deciding whether to remand; the court "may decide the statutory issue, or it may order a remand" to conserve judicial resources. *Id.* at 1029. "Where there is no step one *Chevron* issue, . . . a remand to the agency is required, absent the most unusual circumstances verging on bad faith." *Id.* at 1029–30. The Federal Circuit justified its bright line holding because, where there is no step one *Chevron* issue, agencies are entitled to formulate policy and make rules "to fill any gap left, implicitly or explicitly, by Congress" and that "discretion to reconsider policies does not end once the agency action is appealed." *Id.* at 1030 (internal quotations omitted).

The Federal Circuit in *SKF USA* thus held that the government's motion for voluntary remand fell into the fifth situation and that "remand [was] required." *Id.* Accordingly, the Federal Circuit reversed the CIT's decision, which had denied the agency's request. *Id.*

*SKF USA* is by far the leading authority on the law of voluntary remands. The Third, Fourth, Sixth, Seventh, Ninth, and D.C. Circuits explicitly have followed or have cited the decision with approval. *See Ildefonso-Candelario v. Attorney Gen.*, 866 F.3d 102, 106 (3d Cir. 2017); *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 215 (4th Cir. 2009); *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 417 (6th Cir. 2004); *Ren v. Gonzales*, 440 F.3d 446, 448 (7th Cir. 2006); *California Cmtys. Against Toxics v. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012); *Limnia, Inc. v. United States Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017). While *SKF USA* "explained in careful dictum [when a] voluntary remand is appropriate," *Citizens Against Pellissippi Parkway Extension*, 375 F.3d at 417, the majority of courts apparently have read the decision as solidifying in the law "the presumption in favor of voluntary remands." *Voluntary Remands*, 70 Admin. L. Rev. at 388 (citing cases). Indeed, only a handful of cases following the Federal Circuit's rationale in *SKF USA* have denied a motion for voluntary remand. *Id.* at 388 n.184 (citing *Citizens Against Casino Gambling in Erie Cty. v. Hogen*, No. 07-CV-0451S, 2008 WL 4057101, at *10 (W.D.N.Y. Aug. 26, 2008), *Assiniboine*

-13-

*& Sioux Tribes of Fort Peck Indian Reservation v. Norton*, 527 F. Supp. 2d 130, 136 (D.D.C. 2007), and *Limnia, Inc.*, 857 F.3d at 387)); *see Da Silva v. Attorney Gen.*, 948 F.3d 629, 634 (3d Cir. 2020); *Ildefonso-Candelario*, 866 F.3d at 106–07; *Borrome v. Attorney Gen.*, 687 F.3d 150, 156 n.4 (3d Cir. 2012).

*Limnia, Inc.*, one of the few post-*SKF USA* cases in which a court denied a voluntary remand motion, merits the Court's attention here.  857 F.3d at 388.  In *Limnia*, then-Judge Kavanaugh, writing for a unanimous panel, reversed the order of the district court granting the government's motion for a voluntary remand.  *Id.*  Limnia, Inc. ("Limnia"), the petitioner, developed battery systems for use in electric cars and applied to the Department of Energy ("DOE") for loans under two loan programs.  *Id.* at 382.  The DOE denied Limnia's applications, and Limnia challenged the agency action in district court under the Administrative Procedure Act.  *Id.*  The government moved to dismiss, and, after the district court denied that motion, the government moved for a voluntary remand "to allow Limnia to submit new applications that could be updated to account for any new and relevant information in support of those applications."  *Id.* (internal quotations omitted).  The government "noted that a voluntary remand would afford Limnia the opportunity to reapply to the loan programs — albeit after paying the required application fee for the Loan Guarantee Program application — and update its loan applications with any new information about its project."  *Id.* at 382–83 (internal quotations omitted).  The district court, over Limnia's objection, granted the government's motion and, after further litigation, entered a final, appealable order relinquishing jurisdiction and remanding the matter to DOE, which Limnia then appealed.  *Id.* at 383–84.

The D.C. Circuit noted that a court may only grant a motion for voluntary remand "when the agency intends to take further action with respect to the *original agency decision on review*."  *Id.* at 386 (emphasis in original).  The D.C. Circuit explained further:

> That is not to say that an agency need confess error or impropriety in order to obtain a voluntary remand.  But the agency ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge.

*Id.* at 387.  In *Limnia*, the government did not request a remand "in order to reconsider Limnia's 2009 applications," but instead only "offered to review any new applications Limnia chose to submit, assuming that Limnia remitted the then-required application fees."  *Id.*  As a result, the D.C. Circuit held that the "voluntary remand order was a 'remand' in name only" and acted as a dismissal on the merits.  *Id.* at 388.  Accordingly, the D.C. Circuit reversed.

The United States District Court for the District of Columbia has, at least in one case, applied the D.C. Circuit's guidance in *Limnia*, 857 F.3d 379, to deny a government motion for voluntary remand. *See Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95 (D.D.C. 2019). In *Am. Waterways Operators*, a trade association challenged an Environmental Protection Agency ("EPA") decision regarding whether "adequate pump-out facilities were reasonably available" along the Puget Sound such that the State of Washington could establish a "no-discharge zone" in the area. 427 F. Supp. 3d at 96. The trade association argued that EPA erred by not considering compliance costs before making its determination. *Id.* at 97. EPA moved for a voluntary remand "so that it c[ould] consider costs in the underlying analysis and decide[ ] whether to revise or to leave in place the challenged action in light of this analysis." *Id.* (internal quotations omitted). The district court denied the government's motion and expounded on the analytical framework that the D.C. Circuit employed in *Limnia*. *Id.*

In particular, the district court interpreted the D.C. Circuit's guidance in *Limnia*, 857 F.3d at 387 — that an "agency ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision" — as "a necessary condition to obtain remand." *Am. Waterways Operators*, 427 F. Supp. 3d at 98. The district court, however, held that while necessary, the condition is "not always a sufficient condition" and that a court must also "consider whether remand would unduly prejudice the non-moving party and whether the agency's request appears to be frivolous or made in bad faith." *Id.* at 99 (internal quotations omitted). In the district court's view, "[t]he only 'new' thing before EPA is Plaintiff's Complaint, but EPA has identified nothing in that document that it was unaware of when it issued its decision in 2017." *Id.* at 98. Accordingly, the district court denied EPA "a second bite at the apple" after finding that the proposed remand would unduly prejudice the trade association as well as other non-parties. *Id.* at 98–99.

The case law thus makes clear that where an agency requests a remand without confessing error, the agency must express some intent to reconsider the original agency decision that is the subject of the legal challenge, after which the court has discretion to grant or deny the motion. Where the agency's request is "substantial and legitimate," a court ordinarily should grant the motion; alternatively, where the agency's request is in bad faith or frivolous, a court should deny the motion. *See SKF USA*, 254 F.3d at 1028. In between those relative extremes, the case law demonstrates that the trial court has substantial discretion depending on the timing of the government's motion, its representations regarding the reasons for a remand, the plaintiff's factual allegations viewed through the prism of the particular legal issues involved, and the overall fitness and completeness of the administrative record available for the Court's review. *See, e.g.,* *Limnia, Inc.*, 857 F.3d at 386–87; *Miss. River Transmission Corp.*, 969 F.2d at 1217 n.2; *Am. Waterways Operators*, 427 F. Supp. 3d at 98–99. In this case, as demonstrated in more detail below, those factors justify denying the government's motion. *Krzeminski*, 13 Cl. Ct. at 441 n.21.

### C.      The Government's Motion Is Denied

The Court exercises its discretion in this matter to deny the government's motion for voluntary remand.  The Court recognizes that the "comprehensive typology of litigation positions"[12] described in *SKF USA* was "careful dictum[,]" *Citizens Against Pellissippi Parkway Extension*, 375 F.3d at 417, and the Court follows *SKF USA* here. Nonetheless, the Court begins its analysis by determining which of the five *SKF USA* situations the government's motion presents in this case.

In this case, the government moved for a voluntary remand and therefore does not defend the agency's decision at this stage in the litigation.  Accordingly, the government's motion does not implicate the first two *SKF USA* categories — (1) "in which the agency defends its decision on the grounds articulated by the agency" and (2) "in which the agency seeks to defend its decision on grounds not previously articulated by the agency" — neither of which are voluntary remand situations.  *SKF USA*, 254 F.3d at 1028.

The government's motion also does not implicate the third *SKF USA* situation, in which an agency seeks "a remand because of intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation."  *Id.*  The plaintiff argues that "no intervening events outside of the agency's control have occurred — no new legal decisions have been rendered; no new legislation has been enacted; and no new facts have come to light following the AFBCMR's decision."  Pl. Resp. at 7.  The government does not contest this point.  Transcript of Oral Argument ("Tr.") at 13:2-4 ("So we have taken a look at this case and reviewed the record, and we think we would prevail on the merits were we to move forward."); *id.* at 24:22-25:1 ("THE COURT:  I'm saying do we need the remand at all to further develop the record in terms of documents that are missing?  MR. MCADAMS:  So from the military side, [y]our Honor, we do not believe so.").

Similarly, the government's motion does not implicate the fifth *SKF USA* situation, in which an agency seeks "a remand because it believes that its original decision is incorrect on the merits and wishes to change the result."  254 F.3d at 1029. Indeed, the government strenuously (and somewhat troublingly) argues the opposite here, seeking a remand "so that the AFBCMR can expound upon its rationale for denying plaintiff's request."  Def. Mot. at 1; *see id.* at 4 ("The AFBCMR will issue a new opinion in which it shall expound upon its reasons for adopting the rationale of the AFRC/SGO over the opinion of the AFBCMR's psychiatric consultant in deciding to deny plaintiff's request."); Tr. at 13:2-4 ("So we have taken a look at this case and reviewed the record, and we think we would prevail on the merits were we to move forward"); *id.* at 13:19-22 ("[W]e think that we would prevail on the merits if we were to defend this case.  So it's not a concern with the decision of the Board.").  In sum, the

---

[12] *Voluntary Remands*, 70 Admin. L. Rev. at 386.

Court cannot shake the impression that the government simply wants an opportunity to improve either the reasoning the agency articulated for its decision or the record on which that decision was based. *Borrome*, 687 F.3d at 156 n.4 (denying government's motion for voluntary remand where the government had argued before an agency appeal board that "the result reached in the decision under review is correct . . . and that the issues on appeal are squarely controlled by existing precedent and do not involve the application of precedent to . . . novel facts" and the government gave "no good reason why the [agency appeal board] should have a second chance to consider the [same] issues raised on th[e] appeal" to the court).

Instead, the government's motion quite clearly quite clearly falls into the fourth *SKF USA* category, in which "there are no intervening events [and] the agency [seeks] a remand (without confessing error) in order to reconsider its previous position." *SKF USA*, 254 F.3d at 1029; *see* Def. Mot. at 3 (admitting no "error by the United States, the USAFR, or the AFBCMR" and citing *SKF USA* for the proposition that "even if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position"). In such a situation, the Federal Circuit has ruled that "the reviewing court has discretion over whether to remand." *SKF USA*, 254 F.3d at 1029. The Federal Circuit further explained that "a remand is usually appropriate" when the "agency's concern is substantial and legitimate," but that "[a] remand may be refused if the agency's request is frivolous or in bad faith." *Id.* Accordingly, the Court next analyzes whether the government's motion presents a "substantial and legitimate" concern that would make a remand "appropriate." *Id.*

The Federal Circuit did not define the term "substantial and legitimate" in *SKF USA*, nor has the Court found any controlling law defining this phrase in relation to a voluntary remand request. The CIT, however, has developed a test, which the Court finds persuasive here:

> This Court has found that [an agency's] concerns are substantial and legitimate where 1) "[the agency] provided a compelling justification for its remand request," 2) "the need for finality . . . does not outweigh the justification for voluntary remand presented by [the agency]," and 3) the "scope of [the agency's] remand request is appropriate."

*Ad Hoc Shrimp Trade Action Comm. v. United States*, 882 F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2013) (quoting *Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 412 F. Supp. 2d 1330, 1336–39 (Ct. Int'l Trade 2005)). This test also is consistent with the other factors the Court noted *supra*, including the consideration of the government's representations regarding the reasons for a remand, the plaintiff's factual allegations viewed through the prism of the particular legal issues involved, and the overall fitness and completeness of the administrative record available for the Court's review.

In applying the CIT's test, the Court begins with the government's proffered reasons for requesting a remand here. The government requests a remand to the AFBCMR primarily "so that the AFBCMR can expound upon its rationale for denying plaintiff's request." Def. Mot. at 1. The government further elaborated on that justification by arguing that "a new opinion from the AFBCMR with a comprehensive discussion of the reasons behind the AFBCMR's adoption of the AFRC/SGO's analysis and conclusion will further the interests of justice by best facilitating the Court's review of plaintiff's challenge to the AFBCMR's decision denying his petition." Def. Mot. at 4.

To put a fine point on the matter, the Court rejects the government's asserted rationale and instead concludes that the government does not wish to "reconsider" the original decision at all. Rather, the government seeks a remand simply so that the AFBCMR can bolster its reasons for denying Mr. Keltner's claim, presumably so that the AFBCMR's decision would then have a higher chance of withstanding subsequent judicial scrutiny. That proffered justification for remand is no justification at all.

Moreover, the government does not argue that the record is insufficient, or that this Court would have any difficulty deciding the merits of Mr. Keltner's claim on the administrative record as it currently exists. Tr. at 13:2-4 (government counsel arguing that a remand is not necessary to further develop the record). Indeed, the government argues that the Court's review of the record, as it currently exists, can only result in the Court denying Mr. Keltner relief. *Id.* at 13:19-22 ("[W]e think that we would prevail on the merits if we were to defend this case. So it's not a concern with the decision of the Board.").

Accordingly, despite the government's assertion, a remand would not "further the interests of justice," but would delay this case further and serve to only potentially improve the government's litigation posture. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

The government has not pointed to any case — and this Court has found none — in which a court has granted a motion for voluntary remand when the government's primary goal on remand is to write a better decision for a predetermined outcome. *See Borrome*, 687 F.3d at 156 n.4. Indeed, the fourth *SKF USA* situation, in which "there are no intervening events [and] the agency [seeks] a remand (without confessing error)" only exists when the government seeks a remand "in order to ***reconsider*** its previous position." *SKF USA*, 254 F.3d at 1029 (emphasis added); *see Am. Waterways Operators*, 427 F. Supp. 3d at 98 ("An agency's professed intent to revisit the challenged decision is a necessary condition to obtain remand . . . "). Because the government has not

explained *how* or *why* the AFBCMR would reconsider its decision, there is a complete absence of a "substantial and legitimate" reason to order a remand.

D.C. Circuit precedent also weighs against the government's motion here.  *See Limnia*, 857 F.3d at 387.  This Court heeds then-Judge Kavanaugh's words:

> That is not to say that an agency need confess error or impropriety in order to obtain a voluntary remand.  But the agency ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge.

*Id.*  A court would be hard-pressed to find an agency's justification "substantial and legitimate" where, as here, an agency does not profess any intention to reconsider the underlying administrative decision and, instead, explicitly represents that it has all but already prejudged the merits of the plaintiff's claim.  The Court does not find the government's justification reasonable – let alone "compelling" – in this case, *Ad Hoc Shrimp*, 882 F. Supp. 2d at 1381, and declines to exercise discretion to remand the case to the AFBCMR.

Further still, the need for finality in this matter clearly outweighs the government's justification for requesting a voluntary remand.  The Supreme Court has explained that, with respect to agency action, an "agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation omitted).  When an agency fails to comply with this minimum standard for agency action in the first instance — but the record is otherwise complete and permits judicial review — a party may seek judicial review and a court may order appropriate relief.  *See Fla. Power & Light Co.*, 470 U.S. at 744; *cf. Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973))).  If the AFBCMR did not satisfy this minimum standard in the first instance, the Court sees no reason to afford the AFBCMR a "second bite at the apple" without first reaching the merits of Mr. Keltner's claim.  *See Am. Waterways Operators*, 427 F. Supp. 3d at 98, 100 (denying agency a "second bite at the apple" where agency sought to revisit an "otherwise final decision based solely on its new-found desire" to purportedly "reconsider" certain factors that the agency had already considered in rendering its first decision years prior to the litigation).

Were this Court to hold differently, the government could always seek a voluntary remand following a fully briefed motion for judgment on the administrative record and oral argument, thereby seeking to avoid a loss on the merits (particularly

given that there appears to be no constraint on precisely when the government may request such a remand.  And, according to the government's implicit view here, the courts would then be bound to grant those motions, perhaps repeatedly — and without regard to the interests of finality — until the agency had carefully crafted its decision to avoid a party's legal arguments and potentially withstand judicial review.  The Court declines to adopt the government's position in this case, particularly where the government itself believes that the record is sufficiently ripe for judicial review.  *See Bennett v. Murphy*, No. CV 14-10275-FDS, 2016 WL 1449571, at *1 (D. Mass. Apr. 13, 2016) ("Voluntary remands are commonly granted because they allow agencies to correct their own mistakes without expending the resources of the court in reviewing a record that is *admittedly incomplete or incorrect*." (emphasis added) (citing *Ethyl Corp.*, 989 F.2d at 524)).

The Court also holds that the scope of the government's remand request is problematic in this case.  As indicated above, the Court takes issue with the government's request to order the AFBCMR to "expound upon its rationale for denying plaintiff's request."  Def. Mot. at 1.  RCFC 52.2(b)(1)(A) requires remand orders to contain directions that the Court deems "proper and just."  Requiring Mr. Keltner to wait an additional six months[13] for the AFBCMR to issue another decision reaching the exact same result on the claims that he originally brought over five years ago is neither proper nor just.  *See Clark v. Perdue*, No. CV 19-394, 2019 WL 2476614, at *3 (D.D.C. June 13, 2019) (noting that plaintiff's contention of undue prejudice "carries weight here where she has indeed waited over seven times as long as the law contemplates to have USDA consider her claims").

Because (1) the government has not provided a reasonable justification, "compelling" or otherwise, (2) the interests of finality outweigh the government's justification, and (3) the scope of the government's remand request is not "appropriate," *Ad Hoc Shrimp*, 882 F. Supp. 2d at 1381, the Court declines to exercise its discretion to order a remand here.  *See SKF USA*, 254 F.3d at 1029.

As there is a great deal of space on the discretion continuum between whether a remand request is "substantial and legitimate" or is "in bad faith or frivolous," the Court need not decide where on that spectrum the request at issue lies.  In denying the government's motion here, the Court does not question the motives of the

---

[13] The government requested that the Court stay the proceedings for "180 days" to allow the AFBCMR to issue a new decision.  Def. Mot. at 4.  RCFC 52.2(b)(1)(B) provides that the "duration of the remand" may not "exceed 6 months."  Critically, however, "[u]nder RCFC 52.2, six months is the *maximum* duration for a remand, not some baseline or default period." *Holmes*, 142 Fed. Cl. at 794 (emphasis added).  The government thus seeks the maximum length of time here, without any acknowledgement that Mr. Keltner's Complaint has been pending for six months or that Mr. Keltner filed his appeal with the AFBCMR approximately five years prior to the date the government filed its motion.

government's counsel or agency officials. Rather, the point is simply that, in the total absence of any meaningful justification for a remand — and the attendant further delay that would result — the remand request is quite difficult to fathom.

To the extent that Plaintiff has expressed concerns about the government's litigation tactics,[14] however, the Court is not entirely unsympathetic, considering the government's supplemental brief in support of its remand request, *see* ECF No. 18. The Court struck that brief as nonresponsive and in violation of this Court's March 11, 2020 Order, prohibiting new arguments. *See* ECF No. 19; *see also supra* n. 5. In that supplemental brief, the government raised for the first time a new argument that Mr. Keltner allegedly had waived his right to the relief that he now seeks either by (1) not raising the issue to the AFBCMR in the first instance, or (2) not attending a formal Physical Evaluation Board assessment. *See* ECF No. 18.[15] But, given *that* argument, what is the purpose of the remand? Presumably, the agency would present the waiver argument to the AFBCMR. It is not as if the government here agreed *not* to assert waiver if the plaintiff accepted a remand. *See* Tr. at 19:23–20:4 ("THE COURT:  And if we were to . . . grant the Government's motion for voluntary remand, does the Government commit here that it will not argue [']waiver['] before the Board, that the Board will be counseled not to invoke [']waiver[']?  MR. MCADAMS: We . . . don't think that that would be necessary[.]"). The government's approach in this regard is similar to that which the D.C. Circuit criticized in *Miss. River Transmission Corp.*, 969 F.2d at 1217 n.2 (expressing "extreme displeasure over [the government's] tactics" where "[o]nly at oral argument, after considerable prodding from the bench, did [the government] reveal what it had in mind" for its proposed remand).

The government's voluntary remand request is problematic in at least three additional respects. First, as far as this Court understands the gravamen of Mr. Keltner's Complaint, a remand would serve no practical purpose. In originally deciding Mr. Keltner's claim, the AFBCMR solicited two advisory opinions that analyzed whether Mr. Keltner incurred his disability in the line of duty. Compl. ¶ 29. According to the Complaint, one advisory opinion applied AFI 36-2910 (Dr. Chernyak's opinion) — the Air Force standard for determining whether a warfighter incurred a disability in the line of duty — and concluded that Mr. Keltner incurred his disability in the line of duty. Compl. ¶ 32. The other advisory opinion allegedly failed to apply AFI 36-2910 and concluded that Mr. Keltner's disability did not arise in the line of duty. Compl. ¶ 33. The AFBCMR adopted both the rationale and conclusion of the second advisory opinion and denied Mr. Keltner's claim based solely on that advisory opinion.

---

[14] *See* Pl. Resp. at 6 (arguing the government's remand motion "is a pretext to evade judicial review").

[15] Again, this argument was less than clear, mainly because the government attempted to squeeze into a three-page supplemental briefing an argument that would best be suited for a motion to dismiss or a motion for judgment on the administrative record.

Compl. ¶ 36.  Accordingly, if the advisory opinion that the AFBCMR relied on did not apply the correct standard in evaluating Mr. Keltner's disability, no amount of additional explanation likely would save the AFBCMR's wholesale adoption of that opinion.  If, instead, that advisory opinion applied the correct standard and was supported by substantial evidence, then no new justification will be necessary in order for the Court itself to deny Mr. Keltner's claims.  Thus, a remand would serve no purpose in the ultimate resolution of this case.  *See Limnia*, 857 F.3d at 388 (holding that district court erred in issuing voluntary remand order which "was a 'remand' in name only" because the plaintiff's "position was the same as if its case had been dismissed on the merits").

A second reason for rejecting the government's remand request here is the government's stark admission that the AFBCMR has all but prejudged the case.  *See id.* at 387 ("But the agency ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge."); *cf. A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1489 (D.C. Cir. 1995) ("We do not remand where '[t]here is not the slightest uncertainty as to the outcome of a[n] [agency] proceeding . . . '" (quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766–67 n.6, (1969))).  The Court need not adopt the *per se* rule that the D.C. Circuit apparently has approved that would preclude a remand where the outcome is certain, but where, as here, the record is complete and the government seeks a remand "so that the AFBCMR can expound upon its rationale for denying plaintiff's request," Def. Mot. at 1, a remand would be improper.  This Court will not delay this matter further and either unfairly give the government the opportunity to restart the clock in order to bolster its defense with a post-hoc rationalization, or force Mr. Keltner to file a new or amended complaint in this Court in six months' time.

Finally, the Court exercises its discretion to deny the remand motion, particularly given that the plaintiff is a combat veteran.  *See Dieffenbacher v. DeVos*, No. 17-CV-342, 2017 WL 4786096, at *3 (C.D. Cal. June 9, 2017) (criticizing remand request as an "attempt to evade judicial review" and thereby avoid "a conclusive ruling").  To be crystal clear, the Court is not suggesting that Mr. Keltner should prevail here because of his status — or even that he is entitled to any special treatment whatsoever — but he is at least entitled to have his claims heard on the merits by this Court without the government's interposing any further delay.

As previously noted, the Court has substantial discretion to deny a motion for voluntary remand depending on the timing of the government's motion, its representations regarding the reasons for a remand, and the plaintiff's factual allegations viewed through the prism of the particular legal issues involved.  Each of these factors weighs in favor of denying the government's motion in this case.

*CONCLUSION*

For all the above reasons, the Court **DENIES** the government's motion for voluntary remand.  On or before June 26, 2020, the parties shall file a joint status report, proposing a schedule for further proceedings in this case.

It is so **ORDERED.**

s/Matthew H. Solomson

**Matthew H. Solomson**
**Judge**